UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NOELIA VELAZQUEZ, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | Civil Action No. 17-cv-03601 |
| v. ) | |
| ) | |
| MIDLAND FUNDING, LLC, and MIDLAND ) | |
| CREDIT MANAGEMENT, INC., ) | |
| ) | Jury Demanded |
| DEFENDANTS. ) | |

## COMPLAINT

Plaintiff, Noelia Velazquez, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), and the Illinois Collection Agency Act, 225 ILCS 425, *et seq.* ("ICAA"), and alleges:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA and 28 U.S.C. §1331, and pursuant to 28 U.S.C. § 1367 as to Plaintiff's state law claims.

2. Venue is proper in this District because parts of the acts and transactions occurred here and Defendants transact substantial business here.

## STANDING

3. Plaintiff has suffered an injury in fact that is traceable to Defendants' conduct and that is likely to be redressed by a favorable decision in this matter.

4. Specifically, Plaintiff suffered a concrete informational injury and harm to her reputation as a result of Defendant's failure to provide truthful information in connection with its attempt to collect an alleged debt from Plaintiff, and as a result of Defendants' sharing of false information regarding an alleged debt with a third party. *Bellwood v. Dwivedi*, 895 F.2d 1521,

1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]")

## PARTIES

5.     Plaintiff, Noelia Velazquez ("Plaintiff"), is a resident of the State of Illinois, from whom Defendants attempted to collect a delinquent consumer debt allegedly owed for a defaulted Care Credit medical account.  Plaintiff is thus a consumer as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA and a "debtor" as that term is defined in 225 ILCS 425/2 of the Illinois Collection Agency Act.

6.     Defendant, Midland Funding LLC ("Midland"), is a Delaware limited liability company with its principal place of business at 3111 Camino Del Rio N, #1300, San Diego, CA 92108. It does or transacts business in Illinois. Its registered agent and office are Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703. (Exhibit A, Record from Illinois Secretary of State).

7.     Midland is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.     Midland holds a collection agency license from the state of Illinois. (Exhibit B, Record from Illinois Department of Financial & Professional Regulation).

9.     Midland regularly collects or attempts to collect defaulted consumer debts, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

10.     Defendant, Midland Credit Management ("MCM"), is a Kansas corporation with its principal place of business at 3111 Camino Del Rio N, Suite 1300, San Diego, CA 92108-8875.  MCM does or transacts business in Illinois. Its registered agent and office is Illinois

Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703. (Exhibit C, Record from Illinois Secretary of State).

11. MCM is a collection agency, as that term is defined in the Illinois Collection Agency Act, 225 ILCS 425/1 et seq., and attempts to collect debts held in the name of Midland Funding, LLC.

12. MCM holds a collection agency license from the State of Illinois and is a collection agency as defined in the ICAA. (Exhibit D, Record from Illinois Department of Financial & Professional Regulation).

13. MCM regularly collects or attempts to collect defaulted consumer debts, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

## FACTUAL ALLEGATIONS

14. According to Defendants, Plaintiff incurred an alleged debt for goods and services used for personal purposes, originally for a Care Credit medical account ("alleged debt"). The alleged debt is thus a "debt" as that term is defined at § 1692a(5) of the FDCPA.

15. Due to her financial circumstances, Plaintiff could not pay any debts, and the alleged debt went into default.

16. Midland subsequently purchased the alleged debt and retained MCM to assist in collecting the alleged debt from Plaintiff.

17. On or about February 26, 2017, MCM mailed Plaintiff a collection letter ("Letter"). (Exhibit D, Collection Letter).

18. The Letter conveyed information about the alleged debt, including an account number, the identity of the original creditor, and a current balance.

19. Thus, the Letter was a communication as that term is defined at §1692a(2) of the FDCPA.

20. The Letter offers several discounted settlement options to Plaintiff if she will pay the discounted amount within the following month.

21. The Letter further states:

> **You are hereby notified that a negative credit report on your credit record may be submitted to a credit reporting agency if you fail to meet the terms of your credit obligations.**

22. Plaintiff believed, and the unsophisticated consumer would believe, that MCM was offering to settle her account or that it would report the alleged debt to the national credit bureaus.

23. However, MCM had already reported the alleged debt to the credit bureaus at the time it made the settlement offers. (Exhibit F, Experian credit report showing Defendant Midland's tradeline).

24. In fact, Midland had been reporting the alleged debt since September 2016. (Ex. F, Experian).

25. Therefore, even if Plaintiff were to accept MCM's offer, the damage had already been done to her credit score.

26. MCM offered a false incentive to pay the alleged debt, which was intended to make the consumer afraid of negative effects on her credit report and rating in hopes of pressuring her to settle the debt, even though the alleged debt was already being reported to the credit bureaus and was already damaging her credit score.

27. MCM made this false incentive in an attempt to coerce Plaintiff into settling the alleged debt.

28. 15 U.S.C. § 1692e of the FDCPA provides as follows:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

29. 15 U.S.C. § 1692f of the FDCPA provides as follows:

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

30. MCM used false, deceptive and misleading representations and unfair or unconscionable means in an attempt to collect a debt, in violation of 15 U.S.C. §§ 1692e, 1692e(10) and 1692f, when while inviting Plaintiff to resolve the account they stated that a negative credit report may be submitted, when in fact the alleged debt had already been reported to the credit bureaus.

31. The statement that a delinquent account "may be reported" to a credit bureau when the account has in fact already been so reported is can mislead the unsophisticated consumer. *Johnson v. Enhanced Recovery Co.*, LLC, No. 216CV00330PPSAPR, 2017 WL 168960, at *4 (N.D. Ind. Jan. 17, 2017).

32. The statement is carefully crafted to obscure the fact that the debt was already being reported on his credit report, and was therefore deceptive as a matter of law. *Cuenca v. Harris & Harris, Ltd.*, No. 16-CV-05385, 2017 WL 1196922, at *2 (N.D. Ill. Mar. 31, 2017) (citing *Pantoja v. Portfolio Recovery Assocs., LLC*, No. 15-1567, 2017 WL 1160902, at *6 (7th Cir. Mar. 29, 2017) (holding that carefully crafted language that obscures related information is the sort of misleading tactic the FDCPA prohibits).

33. Conditional language (i.e. "*may* still be reported"), particularly in the absence of any language clarifying or explaining the conditions, does not insulate a debt collector from liability. *Gonzales v. Arrow Fin. Servs., LLC*, 660 F. 3d 1055 (9th Cir. 2011) (cited by *Lox v. CDA, Ltd.*, 689 F. 3d 818 (7th Cir. 2012)).

34. In response to collection attempts by Defendants, Plaintiff consulted with the attorneys at Community Lawyers Group, Ltd., who, on March 13, 2017, sent a letter to Midland indicating that Plaintiff disputed the alleged debt. (Exhibit G, Dispute Letter).

35. Midland received Plaintiff's dispute on March 13, 2017.

36. Plaintiff's letter stated, in part, that the amount reported is not accurate.

37. A statement that "the amount reported is not accurate" evinces the intention to dispute the validity of at least a portion of the purported debt. *Emerson v. Fid. Capital Holdings, Inc.*, No. 15 C 3416, 2015 WL 5086458, at *2 (N.D. Ill. Aug. 14, 2015).

38. After making his dispute, Plaintiff purchased her Experian credit report to check that it was accurately updated.

39. In April 2017, Midland communicated credit information regarding the alleged debt to the Experian consumer reporting agency, including a balance, an account number and the date reported. (Ex. F, Experian).

40. Midland failed to communicate that Plaintiff's alleged debt was disputed when it communicated other information to TransUnion regarding the alleged debt.

41. Midland had been notified more than two weeks prior of Plaintiff's dispute.

42. Two weeks is sufficient time for a debt collector to update their records. *See Herbert v. Monterey Financial Services, Inc.*, 863 F. Supp. 76 (D. Conn. 1994) (holding that five

days was enough time for a debt collector to update their records with information from a consumer's letter").

43. Credit reporting by a debt collector constitutes an attempt to collect a debt. *E.g., Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed in part to wrench compliance with payment terms from its cardholder").

44. Midland materially lowered Plaintiff's credit score by failing to note Plaintiff's dispute.

45. A debt reported with no dispute results in a much lower credit score than a report of both the debt and the dispute. *Saunders v. Branch Banking and Trust Co. of VA*, 526 F. 3d 142, 146-47 (4th Cir. 2008).

46. 15 U.S.C. § 1692e of the FDCPA provides as follows:

> **False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **. . . (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . .**

47. In April 2017, Midland knew or should have known that Plaintiff had disputed the alleged debt because Plaintiff had previously notified Midland of that dispute by letter on March 13, 2017.

48. Even though Midland knew or should have known that Plaintiff disputed owing the alleged debt, Defendants failed to thereafter communicate the fact of Plaintiff's dispute to the

Experian credit reporting agency when they communicated other information regarding the alleged debt, in violation of 15 U.S.C. § 1692e(8).

49. 225 ILCS 425/9 of the Illinois Collection Agency Act provides as follows:

> **. . . (22) Disclosing or threatening to disclose information concerning the existence of a debt which the collection agency knows to be disputed by the debtor without disclosing the fact that the debtor disputes the debt. . . .**

50. Midland disclosed information concerning the existence of a debt which they knew to be disputed without disclosing the fact that Plaintiff disputes the debt, in violation of 225 ILCS 425/9 of the ICAA.

51. A private right of action exists for violation of the ICAA. *Sherman v. Field Clinic*, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

52. In fact, statutes providing for administrative remedies (e.g. the revocation of a license, etc.) imply civil rights of action in Illinois. *Trull v. GC Servs. Ltd. P'ship*, 961 F. Supp. 1199, 1206 (N.D. Ill. 1997).

53. Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. *See*, *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

## COUNT I- FAIR DEBT COLLECTION PRACTICES ACT

54. Plaintiff re-alleges the paragraphs above as if set forth fully in this count.

55. MCM used false, deceptive and misleading representations and unfair or unconscionable means in an attempt to collect a debt, in violation of 15 U.S.C. §§ 1692e, 1692e(10) and 1692f, when while inviting Plaintiff to resolve the account they stated that a negative credit report may be submitted, when in fact the alleged debt had already been reported to the credit bureaus.

56. Midland failed to communicate a dispute to the Experian credit reporting agency, in violation of 15 U.S.C. 1692e(8), when they knew or should have known about the dispute and communicated other information regarding the alleged debt to Experian.

WHEREFORE, Plaintiff respectfully asks this Court enter judgment in Plaintiff's favor and against Defendants as follows:

    A.    Statutory damages from Defendant Midland pursuant to 15 U.S.C. § 1692k(a)(2);

    B.    Statutory damages from Defendant MCM pursuant to 15 U.S.C. § 1692k(a)(2);

    C.    Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and

    D.    Such other or further relief as the Court deems proper.

## COUNT II – ILLINOIS COLLECTION AGENCY ACT

57. Plaintiff re-alleges the above paragraphs as if set forth fully in this count.

58. Midland disclosed information concerning the existence of a debt which they knew to be disputed without disclosing the fact that Plaintiff disputes the debt, in violation of 225 ILCS 425/9 of the ICAA.

WHEREFORE, Plaintiff requests that the Court enter judgment in Plaintiff's favor and against Defendants as follows:

    A.    Compensatory and punitive damages;

    B.    Costs; and

    C.    Such other or further relief as the Court deems proper

## JURY DEMAND

Plaintiff demands trial by jury.

                                                   By: <u>s/Celetha Chatman</u>
                                                        One of Plaintiff's Attorneys

Michael Wood
Celetha Chatman
**Community Lawyers Group, Ltd.**
73 W. Monroe Street, Suite 502
Chicago, IL 60603
Ph: (312) 757-1880
Fx: (312) 476-1362
mwood@communitylawyersgroup.com
cchatman@communitylawyersgroup.com